UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DOLORES MARTON,

               Plaintiff,

vs.                         Case No.  2:10-cv-117-FtM-29DNF

LAZY DAY PROPERTY OWNERS
ASSOCIATION, INC.,  and MARTIN NEWBY
MANAGEMENT CORPORATION, a Florida
corporation,

               Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss and Memorandum of Legal Authority (Doc. #9) filed on March 23, 2010.  Plaintiff filed a response (Doc. #13) on April 6, 2010. With the permission of the Court, defendants filed a reply (Doc. #17) on April 20, 2010.

**I.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff.  Erickson v. Pardus, 551 U.S. 89 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir.

2008)(citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007)).   The former rule -- that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004) -- has been retired by <u>Twombly</u>.   <u>James River Ins. Co.</u>, 540 F.3d at 1274.   Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009).   Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief.   <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989); <u>Brown v. Crawford Cnty.</u>, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.   <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004).   The Court may consider documents which are central to plaintiff's claim whose authenticity is not challenged, whether the document is physically attached to the complaint or not, without converting the motion into one for summary judgment.   <u>Day v. Taylor</u>, 400 F.3d 1272, 1276 (11th Cir.

2005); <u>Maxcess, Inc. v. Lucent Techs.</u>, Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

## II.

Plaintiff alleges the following facts in the Complaint:  Lazy Days Village (the Village) is a mobile home community located in North Fort Myers, Florida which operates as housing for older persons.  (Doc. #1, ¶¶ 10, 25.)  Plaintiff is 73 years old and owns property in the Village.  (Doc. #1, ¶¶ 11, 12.)  Defendant Lazy Days Property Owners Association, Inc. (the Association) is a not-for-profit entity responsible for enforcing the Village's Rules and Regulations (Rules).  (Doc. #1, ¶ 7.)  Defendant Martin Newby Management Corporation (the Management) manages the Village on behalf of the Association.  (Doc. #1, ¶ 9.)

The Rules provide that all residents must be at least 45 years of age and at least one resident living in the home must be 55 years of age or older.  (Doc. #1, ¶¶ 26, 27.)  In 2001, the Rules provided that care-givers were exempted from the minimum age requirements and could reside at the Village as long as a physician attested that the resident receiving care was in need of such care. (Doc. #1, ¶ 26.)  In 2008, the Rules were amended to provide that care-givers must be "bona fide" and that physicians must attest to the need for such care-givers on a specific form approved by the Association.  Additionally, the physician would be required to reevaluate the need for a care-giver and resubmit the form to the

Association every 90 days.  (Doc. #1, ¶ 27.)  Finally, care-givers who wish to reside at the Village must submit a criminal history report and obtain approval of residency from the Association. (Doc. #9.)

Plaintiff has physical impairments which substantially limit one or more of her major life activities.  (Doc. #1, ¶ 14.)  She is often weak and unable to sit or stand for any appreciable period of time and her mobility is sometimes limited due to her weak condition.  (Doc. #1, ¶¶ 17, 18.)  In 2006, plaintiff's daughter, Debra Himes, moved in with plaintiff to act as her care-giver. (Doc. #1, ¶ 29.)  In 2007, Ms. Himes purchased her own home in the Village and continued to assist with her mother's care.  (Doc. #1, ¶ 31.)  Later in 2007, the Association objected to the presence of Ms. Himes at the village based upon her criminal history and failure to obtain approval of residency, as required by the Rules. The Association commenced an eviction action, styled as *Lazy Days Property Owners Assn., Inc. v. Debra Himes* (Lee County Circuit No. 07-CA-9244) (the State Action).   On November 10, 2008, the Association obtained a judgment in the State Action, which permanently enjoined Ms. Himes from residing within the Village.[1] The state court also issued a Writ of Ejectment which instructed

---

[1]The Court takes judicial notice of the judgment entered in the State Action and the Writ of Ejectment.  (Doc. #9, Exh. 1.)

the sheriff to remove Ms. Himes from the Village and prevent her reentry until further order of the state court. (Doc. #9, Exh.1.)

Ms. Himes no longer resides in the Village, however, she continued to visit her mother to provide assistance. Defendants informed plaintiff that her daughter was not permitted at the Village for any reason and if she returned, the Management would call law enforcement to arrest Ms. Himes. (Doc. #1, ¶¶ 34, 35, 37.) In July 2009, Ms. Himes visited her mother, Management called law enforcement and the officers told Ms. Himes she would have to leave. Similar instances occurred on at least four occasions. On July 29, 2009, plaintiff requested, through counsel, that defendants reconsider the threat of calling to arrest Ms. Himes, as plaintiff needed her daughter to visit her periodically to act as her care-giver. On August 5, 2009, Defendants denied the request. (Doc. #1, ¶¶ 41, 42.)

Thereafter, plaintiff filed an administrative complaint with the Florida Commission on Human Relations, which was referred to Lee County Department of Human Resources. The Department conducted an investigation and on October 28, 2009 issued a "Notice of Reasonable Cause Determination" which stated that there was reasonable cause to believe discrimination had occurred. (Doc. #1, Exh. A.) The Department informed plaintiff of her available options and plaintiff elected Federal Court.

Plaintiff filed this action on February 23, 2010, alleging three violations of the Fair Housing Act (FHA). Plaintiff asserts that defendants denied her a "reasonable accommodation" as required by the FHA (Count I); that defendants subjected her to different terms and conditions than other residents of the Village (Count II); and that the Association's policy regarding care-givers places unreasonable burdens on disabled individuals and fails to comply with the FHA (Count III).

### III.

Defendants seek dismissal of the Complaint on two grounds. First, defendants argue that the court lacks subject matter jurisdiction to overturn or alter the State Court Judgment. Second, defendants argue that plaintiff has failed to state a claim for violation of the FHA. The Court will address these arguments in turn.

### A.

Defendants assert that pursuant to the Rooker-Feldman doctrine[2] this Court has no subject matter jurisdiction to entertain plaintiff's claims. The Rooker-Feldman doctrine "places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." Goodman v. Sipos, 259 F.3d 1327,

---

[2]See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

1332 (11th Cir. 2001).  The doctrine applies only in "limited circumstances," where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court.  See Lance v. Dennis, 546 U.S. 459, 466 (2006)(citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005).  The Rooker -Feldman doctrine does not bar actions by non-parties to the earlier state-court action.  Lance, 546 U.S. at 464-66.

In this case, plaintiff was not a party to the State Action and was not in a position to seek review of the state court judgment.  Lance, 546 U.S at 465.  Accordingly, the Rooker-Feldman doctrine does not bar this Court from entertaining plaintiff's claims.

**B.**

Next, defendants argue that plaintiff's claims are barred by collateral estoppel based on the decision in the State Action. Pursuant to the Full Faith and Credit Clause, U.S. Const., Art. IV, §1, as implemented by 28, U.S.C. § 1738, a federal court considering whether to give preclusive effect to a state court judgment must apply the state's law of collateral estoppel. Blanchard v. Deloache-Powers, 286 F.3d 1281, 1289 (11th Cir. 2002). Under Florida law, "collateral estoppel, or issue preclusion, applies when the identical issue has been litigated between the same parties or their privies." Gentile v. Bauder, 718 So.2d 781, 783 (Fla. 1998)(citations omitted).  In addition, the particular

matter must be fully litigated and determined in a contest that
results in a final decision of a court of competent jurisdiction.
Dep't of Health & Rehab. Servs. v. B.J.M., 656 So. 2d 906, 910
(1995).

Here, collateral estoppel does not apply because the issues
presented in the State Action are different from the issues
presented in this case.  In the State Action, the court assumed the
validity of the Village's Rules and applied them to Ms. Himes.  The
Rules required Ms. Himes to obtain approval from the Association
before she could reside at the Village.  Ms. Himes failed to do so.
Additionally, the Rules provided that the Association could
terminate the residency of any resident convicted of a crime "which
may be deemed detrimental to the health, safety, or welfare of
other residents of the community."  Because Ms. Himes was convicted
of a drug-related crime and failed to obtain approval from the
Association, as required, the state court granted the Association's
request to evict Ms. Himes from the Village.  (Doc. #9, Exh. 1, ¶
10.)[3]  The state court specifically declined to determine the
validity of Ms. Himes' status as a care-giver and made no mention
of the FHA.  Therefore, the issue in this case - whether the Rules

---

[3]The State Court Judgment states: "IT IS THEREFORE, the
Judgment of this Court that the Complaint for Injunctive Relief is
GRANTED in favor of Plaintiff, LAZY DAYS PROPERTY OWNERS
INCORPORATED d/b/a LAZY DAYS VILLAGE, and the Defendant, DEBRA
HIMES shall immediately terminate her residency within the boundary
of LAZY DAYS VILLAGE, and shall be permanently ENJOINED from
residing within LAZY DAYS VILLAGE."  (Doc. #9, Exh. 1.)

and defendants' treatment of plaintiff violated the FHA - is not identical to the issue presented in the State Action. Additionally, since no determination was made regarding the FHA, the various FHA violations alleged in this case, were not "fully litigated and determined" in the State Action. Thus, collateral estoppel does not apply.

**IV.**

Defendants also assert that plaintiff has failed to state a claim for violation of the FHA and, therefore, her Compliant should be dismissed. The Court disagrees.

The FHA makes it unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of their handicap. 42 U.S.C. § 3604(f)(1). The FHA also makes it unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of that person's handicap. 42 U.S.C. § 3604(f)(2). Discrimination includes refusing to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B).

Thus, a plaintiff can establish a violation under the FHA by proving (1) intentional discrimination, (2) discriminatory impact,

or (3) a refusal to make a reasonable accommodation.  Bonasera v. City of Norcross, 342 F. App'x 581, 583 (11th Cir. 2009)(citations omitted); Hallmark Developers, Inc. v. Fulton Cnty., 466 F.3d 1276, 1284 (11th Cir. 2006).

**Count I: Denial of Reasonable Accommodation**

To state a claim under 42 U.S.C. § 3604(f)(3)(B), plaintiff must allege facts which support that: "(1) [s]he is disabled or handicapped within the meaning of the FHA, (2)[s]he requested a reasonable accommodation, (3) such accommodation was necessary to afford [her] an opportunity to use and enjoy [her] dwelling, and (4) the defendants refused to make the requested accommodation." Alley v. Les Chateaux Condo. Ass'n, Inc., No. 8:10-cv-760-T-33TGW, 2010 WL 4739508 at *3 (M.D. Fla. 2010)(citing Hawn v. Shoreline Towers Phase I Condo. Ass'n, Inc., 347 F. App'x 464, 467 (11th Cir. 2009)).  An individual is handicapped, for the purposes of the Fair Housing Act, if she has (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of such impairment, or (3) is regarded as having such an impairment.  42 U.S.C. § 3602(h)(1)-(3).

Defendants do not dispute that plaintiff is disabled. Plaintiff has sufficiently pled that she is often weak and unable to sit or stand for any appreciable period of time and her mobility is sometimes limited due to her weak condition and this

substantially limits one or more of her major life activities.[4]

Plaintiff's has also sufficiently alleged that she requested a "reasonable accommodation."  Ordinarily, the duty to make reasonable accommodations is framed by the nature of the particular disability.  See e.g., United States v. Bd. of Trustees for Univ. of Ala., 908 F.2d 740, 746 (11th Cir. 1990)(sign language interpreter needed for deaf students); Jankowski Lee & Assocs. V. Cisneros, 91 F.3d 891, 894-95 (7th Cir. 1996)(parking space needed to accommodate sufferer of multiple sclerosis).  Here, the Village has a policy regarding care-givers and that policy states that care-givers who wish to reside at the property must submit to a background check and be approved by the Association.  Pursuant to that policy, the Village obtained a court order evicting plaintiff's care-giver which defendants interpret as barring plaintiff's daughter from visiting the premises for any purpose. Plaintiff has alleged that she requested an accommodation permitting her daughter to visit the premises, but the accommodation was refused.

---

[4]While the FHA does not define "major life activities" the term is defined in the Americans with Disabilities Act (ADA) as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2 (as amended by 76 F.R. 16978-01); see also McManus v. Cherry, 1:08-cv-00110, 2010 WL 5638108 at *4 (N.D. Fla. Nov. 19, 2010)(noting congressional intent that provisions of FHA related to disability be read similarly to provisions in ADA).

The Court finds that plaintiff has stated a claim for violation of 42 U.S.C. § 3604(f)(3)(B).

**Count II: Different Terms and Conditions**

Plaintiff alleges that defendants "imposed different terms and conditions to Ms. Marton by subjecting her to a more rigorous enforcement of community rules, to harassment, and to a threat of citation for rules violations which had no basis in law." (Doc. #1, ¶ 58.)

Because plaintiff generally alleges that she was subjected to different terms and conditions as well as harassment and threats, it is unclear whether she intends to assert a claim for disparate treatment (based on intentional discrimination) or a retaliation claim under § 3617.  To state a claim for disparate treatment, plaintiff must allege facts which support that she was treated differently than similarly situated non-handicapped people because of her handicap.  Schwarz v. Treasure Island, 544 F.3d 1201, 1216 (11th Cir. 2008)(citing Loren v. Sasser, 309 F.3d 1296, 1302 (11th Cir. 2002)); see also Bonasera, 342 F. App'x at 584 ("To prove intentional discrimination, 'a plaintiff has the burden of showing that the defendants actually intended or were improperly motivated in their decision to discriminate against persons protected by the FHA.'")(citation omitted).  To state a retaliation claim under § 3617, plaintiff must allege that: (1) she is a member of a protected class under the FHA, (2) she exercised or enjoyed a right

protected by §§ 3603-3606, or aided or encouraged others in exercising or enjoying such rights; (3) the defendants' conduct was at least in part intentional discrimination and (4) the defendants' conduct constituted coercion, intimidation, threat, or interference on account of having exercised, or aided or encouraged others in exercising, a right protected under §§ 3603-3606. <u>U.S. v. Sea Winds of Marco, Inc</u>., 893 F. Supp. 1051, 1055 (M.D. Fla. 1995); <u>Simoes v. Wintermere Pointe Homeowners Ass'n,Inc.</u>, No. 6:08-cv-01384-LSC, 2009 WL 2216781 at *6 (M.D. Fla. Jul. 22, 2009). Plaintiff's allegations are sufficient as to either claim.

**Count III: Discriminatory Policy Regarding Reasonable Accommodation**

Plaintiff alleges that the Association's policy regarding care-givers places an unreasonable burden on her as well as other disabled individuals. Plaintiff seeks an order declaring that the Association's policy violates the FHA and injunctive relief requiring the Association to amend its bylaws, rules and regulations to reflect a care-giver policy which is less burdensome on handicapped individuals.

Plaintiff identifies the following provisions of the policy as discriminatory:

a. Requiring a physician to attest in writing regarding the need for a care-giver;

b. Limiting a care-giver to providing assistance only to individuals who are over the age of 55 years, despite there being younger individuals residing in the unit;

c.   Requiring a disabled person to use an approved form to request the presence of a care-giver;

d.   Requiring a care-giver to be "qualified" and "bona fide", without defining those terms;

e.   Requiring the disabled person to submit written confirmation every ninety days without describing what is to be confirmed;

f.   Requiring the disabled person to submit written confirmation every ninety days when doing so imposes an unreasonable burden of time and expense to the disabled person; and

g.   Requiring the disabled person's confirmation to be "validated" without defining that term.

As stated above, a plaintiff can establish a violation under the FHA by proving (1) intentional discrimination, (2) discriminatory impact, or (3) a refusal to make a reasonable accommodation. Bonasera v. City of Norcross, 342 F. App'x 581, 583 (11th Cir. 2009)(citations omitted).  It is unclear which of the three, plaintiff is asserting in this Count.

Plaintiff cites the "reasonable accommodation" section of the statute, but fails to allege that she requested a reasonable accommodation as to any of the seven reasons identified.  She simply alleges that the Association has these "unreasonable" policies with respect to care-givers.

If plaintiff is attempting to allege a discriminatory impact claim, she must state facts which support that the Association's policies "otherwise make unavailable" or effectively "deny" housing to handicapped individuals.  Hallmark, 466 F.3d at 1284.  While no

single test controls, typically disparate impact is demonstrated by statistics.  Id. at 1285.  Plaintiff's conclusory allegations do not suffice.

Thus, this Count will be dismissed without prejudice.

Accordingly, it is now

**ORDERED**:

1.  Defendants' Motion to Dismiss and Memorandum of Legal Authority (Doc. #9) is **GRANTED IN PART AND DENIED IN PART** to the extent that Count III of the Complaint is dismissed without prejudice.  The motion is otherwise denied.

2.  Plaintiff may file an amended complaint within **TWENTY-ONE (21) DAYS** of this Opinion and Order if she wishes to amend Count III.

3.  If no Amended Complaint is filed, defendants shall file an answer within **TWENTY-ONE (21) DAYS** thereafter.  If an Amended Complaint is filed, Defendants shall answer or otherwise respond within **TWENTY-ONE 21 DAYS** of its filing.

**DONE AND ORDERED** at Fort Myers, Florida, this ___30th___ day of March, 2011.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record